# **<u>EXHIBIT A</u>**

## EXCHANGE AGREEMENT

THIS EXCHANGE AGREEMENT (this "Agreement") is made and entered into as of June 17, 2008 by and between WELLS FARGO BANK, N.A. AS TRUSTEE UNDER DECLARATION OF TRUST, LEO AND IRENE KARSIN TRUST NO.2 (hereinafter referred to as "Exchanger"), and NAMCO FINANCIAL EXCHANGE CORP., a California corporation (hereinafter "Intermediary").

This Agreement is made and entered into with reference to the following facts:

A. Exchanger is the present owner of certain rights in that certain real property located at 8811 Canoga Avenue, Canoga Park, California 91303 (APN. 2779-019-025) (hereinafter collectively referred to as the "Relinquished Property").

B. Exchanger desires to make a qualified tax deferred exchange of the Relinquished Property for other property or properties of like kind pursuant to and in accordance with Section 1031 of the Internal Revenue Code, and the Treasury regulations promulgated thereunder ("Treasury Regulations").

C. The Relinquished Property is the subject of that certain Purchase and Sale Agreement (the "Purchase Agreement"), dated May 1, 2008, and between Exchanger, as seller, and BART THOMSEN, and/or Assignee, as buyer ("Buyer").

D. Intermediary is willing to act as a "qualified intermediary", as that term is defined in Treasury Regulations Sections 11031 (k)- 1 (g)(4), in connection with Exchanger's exchange.

NOW THEREFORE, in consideration of the mutual covenants, conditions, and agreements set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Exchanger and Intermediary hereby agree as follows:

1. EXCHANGE OF PROPERTIES.

1.1 Exchanger agrees to convey the Relinquished Property to Intermediary in consideration of, and in exchange for the conveyance by Intermediary to Exchanger of other property (or properties) of like kind to be identified by Exchanger and conveyed to Intermediary pursuant to Section 2 below. Such other property (or properties) is referred to in this Agreement as the "Replacement Property." Intermediary agrees to convey the Relinquished Property to Buyer and to acquire the Replacement Property from the seller or sellers thereof (the "Seller"), on the terms and conditions in this Agreement, in furtherance of the exchange described above.

1.2 Concurrently with the execution of this Agreement, Exchanger shall execute an Assignment Agreement ("Assignment"), which provides that Intermediary will succeed to all the contractual rights, and the contractual obligations of Exchanger to convey the Relinquished Property to Buyer, in connection with a tax-deferred exchange for Exchanger.

1

1.3    Intermediary shall convey or cause the conveyance of the Relinquished Property to Buyer pursuant to the terms of the Purchase Agreement. In order to facilitate the transfer of the Relinquished Property to Buyer, and to save additional transfer taxes and other costs, Exchanger shall convey and assign the Relinquished Property directly to Buyer on behalf of Intermediary.

## 2 EXCHANGER'S TIME REQUIREMENTS

2.1    Exchanger acknowledges that, for the exchange transaction to qualify for deferral of gain under Internal Revenue Code Section 1031, Exchanger must satisfy the following time requirements, which shall be the sole responsibility of Exchanger:

a.  Exchanger must identify the Replacement Property before the expiration of the Identification Period (defined below); and

b.  Exchanger must receive the identified Replacement Property before the expiration of the Exchange Period (defined below).

2.2    Within forty-five (45) days following the conveyance of the Relinquished Property from Exchanger to Intermediary (the "Identification Period"), Exchanger shall identify the Replacement Property.

2.3    The Replacement Property shall be deemed identified only if it is designated as replacement property in a written document signed by the taxpayer and hand delivered, mailed, telecopied, or otherwise sent before the end of the Identification Period to either:

a.  The person obligated to transfer the Replacement Property to Exchanger; or

b.  Any other person involved in the exchange other than the Exchanger or a disqualified person as defined in Treasury Regulations Sections 1.1031 (k)(2), (k)(3) or (k)(4).

Replacement Property is deemed identified before the end of the Identification Period only if the requirements of this section are satisfied with respect to the Replacement Property. However, any Replacement Property that is received by Exchanger before the end of the Identification Period will, in all events, be treated as identified before the end of the Identification Period.

2.4    The period within which the taxpayer must receive the replacement property (the "Exchange Period") begins on the date on which the Relinquished Property sale escrow closes and ends at midnight on *the earlier of* one hundred eighty (180) days after the date on which the Relinquished Property sale escrow closes *or* the due date for the taxpayer's tax return for the taxable year in which the transfer of the relinquished property occurs. If there are multiple Relinquished Properties then the Exchange Period will begin on the date the first Relinquished Property escrow closes.

2

3. ACQUISITION OF REPLACEMENT PROPERTY

3.1 Exchanger shall establish with the Seller of the identified Replacement Property the terms of acquisition thereof and shall provide Intermediary with the form of acquisition agreement acceptable to Exchanger. Intermediary shall thereafter accept an assignment of Exchanger's contract rights to purchase the Replacement Property.

3.2 Intermediary shall acquire the Replacement Property through procedures specified in the relevant acquisition agreement. Concurrent with the acquisition of the Replacement Property, Intermediary shall cause the transfer and conveyance thereof to Exchanger. In order to facilitate the transfer of the Replacement Property to Exchanger, and to save additional transfer taxes and other costs, Intermediary shall be deemed to have satisfied its obligations hereunder if it causes the Seller of any Replacement Property to convey title thereof directly to Exchanger rather than Intermediary first acquiring title and thereafter conveying it to Exchanger.

3.3 In no event shall Intermediary be required to make a cash payment for the acquisition of the Replacement Property, including all costs and expenses of such acquisition or acquisitions, in excess of the Exchange Proceeds, as defined below, to the extent they have then been received in cash by Intermediary from the sale of the Relinquished Property. All costs of acquiring the Replacement Property, including payments toward the purchase price and all other acquisition fees incident thereto shall be borne first from the Exchange Proceeds held by Intermediary under this Agreement and then, to the extent necessary, from the funds of Exchanger. Further, Intermediary shall not be required to assume any secured loan on the Replacement Property to be acquired or to execute a promissory note or other evidence of indebtedness in connection with such acquisition or acquisitions which might impose any liability upon Intermediary for repayment of such obligation continuing after the date of closing with respect to the Replacement Property

4. TERMINATION OF EXCHANGE

4.1 Except as expressly provided herein, Exchanger shall have no right to request or receive anything other than like kind real property for the period beginning on the date the Relinquished Property is transferred to Buyer and ending at midnight on the last day of the Exchange Period. Exchanger shall therefore have no right, except as provided in Section 4.2, to receive, pledge, borrow, or otherwise obtain the benefits of money (including, without limitation, any interest income earned on the proceeds held in trust by Intermediary under this Agreement, as described in Section 20 below) or other property held by Intermediary under this Agreement prior to the end of the Exchange Period.

4.2 Exchanger shall have the right to require Intermediary to distribute the balance of the Exchange Proceeds upon the conditions set forth as follows:

(i) After the expiration of the Identification Period, if Exchanger has not identified Replacement Property (pursuant to Section 2) by the end of the Identification Period; or

3

(ii) If Exchanger has identified Replacement Property (pursuant to Section 2) and Exchanger has received all of the Replacement Property to which they are entitled to under this Agreement; or

(iii) After the expiration of the Identification Period, if Exchanger has identified Replacement Property (pursuant to Section 2) and there has occurred after the end of the Identification Period, a material and substantial contingency that (1) relates to the deferred exchange, (2) is provided for in writing, and (3) is beyond the control of the Exchanger and of any disqualified person (as defined in Treasury Regulations 1.1031 (k)(2), (k)(3) or (k)(4)), other than the person obligated to transfer the Replacement Property to Exchanger.

Then Intermediary shall pay to Exchanger the amount equal to the balance of any unused Exchange Proceeds. In the event that Intermediary makes such cash payment to Exchanger at Intermediary's sole election as provided above, the Intermediary shall thereafter have no further obligation regarding the acquisition and conveyance of the Replacement Property. In the event Intermediary makes such cash payment to Exchanger, Exchanger agrees to receive such payment by company check of Intermediary. It is intended that the foregoing conditions be interpreted and imposed in a manner consistent with the limitations contained in Regulations Section 1.1031 (k)—1 (g)(6).

4.3 Upon the expiration of the Exchange Period, Intermediary shall distribute to Exchanger a sum equal to any balance of the Exchange Proceeds that Intermediary has not already used to acquire Replacement Property for conveyance to Exchanger.

5. EXCHANGE PROCEEDS. On or immediately after the close of escrow for the conveyance of the Relinquished Property, the Escrow Holder, as defined below, will deposit with Intermediary funds and/or negotiable paper "Exchange Proceeds" representing the net proceeds from the sale of the Relinquished Property from Intermediary to Buyer. Exchanger and Intermediary expressly agree that any cash proceeds received from the conveyance of the Relinquished Property will be deposited with other funds in a general account or accounts of the Intermediary with any nationally insured bank or savings institution, and may be transferred to any other such general account or accounts as directed by Intermediary. Exchanger shall receive all interest earned on the Exchange Proceeds on deposit with Intermediary subject to payment of the Administrative Fee required pursuant to paragraph 20 of this Agreement.

6. ESCROW. The escrow for the transfer of the Relinquished Property has been established with FIDELITY NATIONAL TITLE COMPANY, located at 950 Hampshire Road, Westlake Village, California 91361; Escrow Number: 08-609609800-KB ("Escrow Holder"). This Agreement shall be attached to any instructions prepared for such escrow and shall thereby be incorporated into and form a part of such instructions. The parties hereto, and each of them, covenant and agree to execute escrow instructions to the Escrow Holder consistent with the terms and provisions of this Agreement for the purpose of effecting transfer provided therein.

7. CONFLICTING INSTRUCTIONS. Upon receipt of any conflicting instructions, Intermediary will no longer be obligated to take any action in connection with this transaction until further consistent instructions are received from the principals, and Intermediary is authorized to hold all moneys and/or instruments until otherwise directed, either by the

4

principals' mutual written instructions or by final order of a court of competent jurisdiction. In the event of conflicting claims to any funds or other documents, Intermediary has the absolute right, at their election, to file an action interpleader requiring the principals to answer and litigate their several claims and rights amongst themselves.

8. EXECUTION OF DOCUMENTS. All the parties agree to execute any and all additional documents and instruments necessary to carry out the terms of this Agreement.

9. COUNTERPARTS. This Agreement may be executed in counterparts and shall be of the same force and effect as if one document had been signed by all parties.

10. CONFLICT WITH PRIOR AGREEMENTS. If and to the extent that this Agreement is in conflict with any prior written agreement or understanding between the parties hereto, the terms of this Agreement shall prevail. No modification or waiver of the terms of the Agreement shall be valid unless made in writing and signed by both parties.

11. SURVIVAL. The terms of this Agreement shall survive the close of escrow and the delivery of the deed of the Relinquished Property to Intermediary or Buyer.

12. TIME. Time is of the essence of this Agreement.

13. BINDING. This Agreement shall inure to the benefit of, and shall be binding upon, the parties hereto, their estates, heirs, representatives, and assigns; provided, however, that neither Intermediary nor Exchanger shall have the right to assign, pledge, hypothecate, or transfer this Agreement or any of their respective rights hereunder without the prior written consent of the other, which may be withheld in the sole discretion of the party whose consent is sought.

14. NOTICES. Any notice to be given hereunder shall be given by personal delivery or by depositing such notice in the United States Mail first class postage prepaid, or personal delivery, and addressed to the respective party at the following address:

Exchanger
HOLLY GETLIN
~~Wells Fargo Bank, N.A.~~ as trustee
Under Declaration of Trust, Leo and Irene Karsin Trust No.2
Attn.: Holly C. Gettin, Trustee
20615 Oaksbore Circle
Woodland Hills, California 91364
Tel:   818-888-3979
Fax:   same as above

5

With Copy to:

Law Office of Morton C. Devor
Fourth Floor
12400 Wilshire Boulevard
Los Angeles, California 90025
Tel:    310-207-2119
Fax:    310-207-8239

Intermediary

Namco Financial Exchange Corp.
Attn:   Val Mitsue Muraoka
12121 Wilshire Boulevard, 1400
Los Angeles, CA 90025
Tel:    310-207-1000
Fax:    310-207-6308
Email:  valm@namcocapital.com

15. NO AGENCY. Exchanger acknowledges that Intermediary is acting as a principal in all the transactions contemplated by this Agreement and in no way shall be deemed an agent of Exchanger. Intermediary shall not have any obligations to Exchanger as an agent of Exchanger nor shall Exchanger have any obligations to Intermediary as a principal of Intermediary.

16. ATTORNEYS FEES. Should suit be brought to enforce or interpret any part of this Agreement, the prevailing party shall be entitled to recover as an element of its costs and not as damages, reasonable attorneys fees to be fixed by the court.

17. INDEMNIFICATION AND ACKNOWLEDGMENTS. Exchanger shall and does hereby agree to hold Intermediary harmless and to indemnify Intermediary and its shareholders, officers, directors, employees, attorneys and representatives from any and all claims, expenses, losses, costs, taxes, and assessments of any nature or kind, and from any and all other claims whatsoever, expressed or implied, whether sounding in tort or in contract, that may be asserted against Intermediary now or in the future by any person (including, without limitation, Exchanger), firm, corporation, governmental agency or taxing authority that may arise out of or in connection with this Agreement, and/or any activity related to carrying out the terms of this Agreement, except only for any claim, expense, tax or assessment arising solely out of the gross negligence or willful misconduct of Intermediary. Exchanger has been advised and urged by Intermediary to obtain the advice and review of this Agreement and the entire transaction by an independent legal counsel and accountant regarding the legal and tax implications of the contemplated transaction, and all related documents and agreements, particularly those drafted, presented or produced by Intermediary. Exchanger has not relied, and will not rely, upon any statement or representations made by Intermediary. Exchanger has represented and warranted to Intermediary that Exchanger has consulted with its own attorney with regard to the transaction described in this Agreement, and that the proposed exchange, involving the Relinquished Property, is a valid and conforming exchange transaction as contemplated by the provisions of Internal Revenue Code section 1031 and the related Treasury Regulations. The indemnity provided for herein shall include any and all liability, directly or indirectly caused by the use,

6

Wells Fargo Bank, N.A. as trustee Under Declaration of Trust, Leo & Irene Kamin Trust No.2 - 1031 Tax Deferred Exchange
Relinquished Property: 6811 Canoga Avenue, Canoga Park, California 91303
Fidelity National Title Company - Escrow No. 06-600609R00-KB

analysis, storage, transportation, disposal, release, threatened release, discharge or generation of hazardous materials to, in, on, under, about, or from the Relinquished Property or any Replacement Property as part of this exchange. Exchanger's obligations shall include without limitation, and whether foreseeable or unforeseeable, all damages, claims or liabilities to any person or any property whatsoever, including all costs of any required or necessary repair, cleanup, detoxification or decontamination of any said property or any improvements, and the preparation and implementation of any closure, remedial action or other required plans in connection herewith.

18. NO WARRANTY REGARDING TAX CONSEQUENCES. INTERMEDIARY MAKES NO REPRESENTATIONS OR WARRANTY, NOR SHALL INTERMEDIARY BEAR ANY RESPONSIBILITY OR LIABILITY, CONCERNING THE FEDERAL OR STATE TAX CONSEQUENCES TO EXCHANGER OF THE TRANSACTION CONTEMPLATED HEREIN; INCLUDING, WITHOUT LIMITATION, THE STATUS OF ANY REPLACEMENT PROPERTY AS LIKE KIND PROPERTY OR THE QUALIFICATION OF THIS TRANSACTION AS A TAX-DEFERRED EXCHANGE PURSUANT TO SECTION 1031 OF THE INTERNAL REVENUE CODE OR APPLICABLE STATE TAX LAWS.

19. GOVERNING LAW. This Agreement shall be interpreted under and governed by the laws of the State of California.

20. FEE. As consideration for Intermediary's services under this Agreement, Exchanger shall pay to Intermediary an Exchange Fee in the amount of SEVEN HUNDRED FIFTY AND NO/100 DOLLARS ($750.00). The Exchange Fee is non-refundable and shall be deducted from the proceeds received. This Exchange Fee is based on one relinquished property and one replacement property. If Exchanger is acquiring more than one replacement property, each additional replacement property shall costs an additional TWO HUNDRED AND NO/100 DOLLARS ($200.00). This fee shall be deducted directly from your exchange account upon completion of the necessary documentation. In addition to the Exchange Fee, any and all out-of-pocket costs incurred by Intermediary in connection with the Relinquished Property Sale Escrow and the Replacement Property Sale Escrow shall be due and payable upon the close of the Relinquished Property Sale Escrow and the Replacement Property Sale Escrow.

21. AFFILIATION. Exchanger is aware that shareholders, officers and/or directors of Intermediary are also shareholders and directors of Network Bank USA, and that Intermediary may deposit funds received or held by Intermediary in connection with the exchange transaction described in this Agreement in one or more accounts at Network Bank USA, and that Intermediary may receive interest or other benefits in connection with such deposits, all of which may be different from, and/or may exceed, interest which Exchanger may receive on funds with respect to which it is the beneficial owner under the exchange transaction. Exchanger waives, and at all times will waive, all rights and claims that it may now or hereafter have in connection with, related to or otherwise arising out of the matters described in the preceding sentence.

7

22. JOINT AND SEVERAL. The obligations and liabilities of the parties comprising Exchanger, if more than one, are and shall be the joint and several obligations of each of them.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

**EXCHANGER**

WELLS FARGO BANK, N.A. AS TRUSTEE
UNDER DECLARATION OF TRUST,
LEO AND IRENE KARSIN TRUST NO.2

By: _____
Holly C. Zetlin
Its: Trustee

90-6671383
Social Security or Tax Identification Number

**INTERMEDIARY**

NAMCO FINANCIAL EXCHANGE CORP.,
a California corporation

By: _____
Hamid Tabs
Its: Controller

8

Wells Fargo Bank, N.A. as trustee Under Declaration of Trust, Leo & Irene Karsin Trust No.2 - 1031 Tax Deferred Exchange
Relinquished Property: 6811 Canoga Avenue, Canoga Park, California 91303
Fidelity National Title Company - Escrow No. 08-609603805-KB